UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GKN DRIVELINE NEWTON LLC,

Plaintiff,

v.

STAHL SPECIALTY COMPANY, and
LIGON INDUSTRIES LLC,

Defendants.

_____/

Case No. 15-cv-14427

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
STEPHANIE DAWKINS DAVIS

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS [11, 12]**

**I. INTRODUCTION**

On December 22, 2015, GKN Driveline Newton, LLC ("GKN" or "Plaintiff") commenced this action against Stahl Specialty Company ("Stahl") and Ligon Industries, LLC ("Ligon") (collectively, "Stahl" or "Defendants"). See Dkt. No. 1, p. 1 (Pg. ID No. 1.). Plaintiff's Complaint contains two counts, alleging that Defendants breached the parties' contract by failing to pay expedited freight and shipping costs, and requesting the Court pierce the corporate veil between Stahl and Ligon for the purposes of this proceeding. *Id*. at 12–14 (Pg. ID No. 12–14).

The matter is presently before the Court on Defendants' Motions to Dismiss [11, 12], pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Dkt. No. 11, p. 1 (Pg. ID No. 72); Dkt. No. 12, p. 1 (Pg. ID No. 156). The motions were

-1-

filed on February 18, 2016. *See id*. Plaintiff responded on March 14, 2016, and Defendants replied on March 31, 2016. *See* Dkt. No. 18–21.

On May 2, 2016, the Court conducted a hearing on both motions and heard oral argument from counsel. For the reasons discussed herein, the Court **DENIES** Defendants' Motions to Dismiss [11, 12].

## II. BACKGROUND

This action arises from Plaintiff's allegations that Defendants breached contracts for the sale and delivery of Lambda RDM Torque Tubes ("T-Tubes"), which Plaintiff uses in transmission components sold to Magna Powertrain. *See* Dkt. No. 1, p. 2 (Pg. ID No. 2).

Plaintiff is a limited liability company with its corporate headquarters located in North Carolina. *Id*. at 3. Plaintiff's members are citizens of Michigan and Illinois. *Id*. Stahl is a Missouri corporation with its principal place of business located in Missouri. *Id*. Ligon[1] is a limited liability company based in Birmingham, Alabama. *Id*.

Stahl has supplied T-Tubes to Plaintiff and its predecessor since 2008. *Id*. at 4. Plaintiff asserts that the contract between the parties is comprised of "purchase

_____

[1] Ligon asserts that Ligon Capital, LLC acquired Stahl Specialty Company on December 31, 2010. Dkt. No. 12, p. 13 (Pg. ID No. 168). Ligon maintains that it has no ownership interest in Stahl or in Ligon Capital, LLC. *Id*.

orders, terms and conditions, and other contractual documents," for supplying the T-Tubes. *Id*. at 2. The T-Tubes are part of transmission modules that are supplied "just-in-time" to Magna, so that Plaintiff only has an inventory of approximately eight production hours' worth of parts, Magna only has three to four production hours' worth of inventory, and Magna's customer, General Motors, does not have any inventory of excess parts. *Id*.

Plaintiff contends that Stahl began having trouble supplying the quantity and quality of T-Tubes needed to maintain the supply chain in early 2015. *Id*. at 4. On January 28, 2015, Stahl demanded an increase on the price of the T-Tubes they sold to Plaintiff, stating that because "the existing pricing has a negative financial impact on our company for every piece produced," "we must request [the increased] pricing be accepted on every piece delivered from the [sic] January 9, 2015 going forward." Dkt. No. 1-2, p. 2 (Pg. ID No. 19). Additionally, Stahl stated in this letter that "[i]f [GKN] find[s] that [its] best business decision is to choose another source, Stahl will respect our relationship and support GKN fully through the transition, given that it is supported by your acceptance of this pricing." *Id*.

In February 2015, the parties met to discuss the supply issues. Dkt. No. 1, p. 4 (Pg. ID No. 4); Dkt. No. 1-3, p. 2 (Pg. ID No. 21). Plaintiff granted Stahl a price increase on the T-Tubes, but noted that this situation triggered resourcing activities that were estimated to take about nine months. *Id*. Stahl agreed to

collaborate and support Plaintiff's resourcing activities. *Id.*; Dkt. No. 1-4, p. 2 (Pg. ID No. 23).

On July 31, 2015, Stahl gave Plaintiff notice that it would stop shipping parts after a six-week firm release period. Dkt. No. 1-5, p. 2 (Pg. ID No. 25). In order to prevent an interruption in supply to Magna or General Motors, Plaintiff took "extraordinary measures" to produce the quantity of parts required. Dkt. No. 1, p. 5 (Pg. ID No. 5). These measures included air freighting shipments from Stahl to Plaintiff and from Plaintiff to Magna four times per day, at the cost of approximately $80,000 per shipment. *Id.* at 5–6. Plaintiff estimates that its efforts cost it approximately six million dollars in expedited freight charges and other such charges. Dkt. No. 18, p. 5 (Pg. ID No. 299).

Plaintiff alleges that it notified Stahl that it would hold Stahl responsible for all costs incurred as a result of Stahl's failure to continue uninterrupted shipments. Dkt. No. 1, p. 6 (Pg. ID No. 6). The "General Terms and Conditions of Purchase" (hereinafter, "Terms and Conditions") between the parties provides that "[i]f Products are not ready for delivery in time to meet Buyer's shipping schedules, Seller shall be responsible for additional costs of any resulting expedited or other special transportation." Dkt. No. 1-6, p. 4 (Pg. ID No. 30). Additionally, Plaintiff argues that Stahl violated the provision of the above contract, which required it to

maintain a pre-produced emergency inventory in the amount equivalent to an average monthly delivery quantity. *Id*.

Defendants now move this Court to dismiss Plaintiff's claims by asserting that Plaintiff has failed to state a claim against Stahl and Ligon upon which relief can be granted, and that the Court lacks personal jurisdiction over Ligon.

### III. LEGAL STANDARD

**A.      Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (2009) (applying the plausibility standard articulated in *Twombly*).

-5-

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his or her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). However, the Court need not accept mere conclusory statements or legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.     Federal Rule of Civil Procedure 12(b)(2)**

A motion to dismiss under Rule 12(b)(2) places the burden on the plaintiff to establish jurisdiction over the defendant. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Where, as here, the court does not conduct an evidentiary hearing regarding personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Nevertheless, the plaintiff may not simply reassert the

allegations contained in its pleadings, but instead must "set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court must view the pleadings and affidavits in the light most favorable to the plaintiff, and does not consider contrary assertions made by the defendant. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

## IV. DISCUSSION

**A.     Defendant Stahl Specialty Company's Motion to Dismiss [11]**

### 1.  Whether Plaintiff's Breach of Contract Claim Is Sufficiently Pled

Stahl's Motion to Dismiss asserts that Plaintiff fails to state a claim for breach of contract because the Complaint insufficiently defines the terms of the contract. *See* Dkt. No. 11, p. 8 (Pg. ID No. 87).

"To state a breach of contract claim under Michigan law, a plaintiff must first establish the elements of a valid contract." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). "A valid contract is formed when there are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 831 (E.D. Mich. 2014) (citing *Thomas v. Leja*, 187 Mich. App. 418, 468 N.W.2d 58, 60 (1991)). "To recover for breach of contract under Michigan law, a plaintiff must allege: (1) the existence of a contract; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the breach

caused the plaintiff's injury." *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 953 (6th Cir. 2014).

Here, Plaintiff describes the "Contract" as "a requirements contract evidenced by purchase orders, terms and conditions, and other contractual documents." Dkt. No. 1, p. 2 (Pg. ID No. 2). Stahl argues that it was insufficient for Plaintiff to only attach its standard Terms and Conditions to the Complaint, without attaching the aforementioned "purchase orders" and "other contractual documents" that Plaintiff alleges comprise the "Contract."

To the extent that Stahl has argued that Plaintiff's breach of contract claim should be dismissed for failure to attach the contract documents to the Complaint, such an argument falls flat. Plaintiff is not obligated to attach the documents upon which the action is premised to the Complaint under the permissive standard of Rule 10(c). *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 720–21 (E.D. Mich. 2003) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). *See also* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶ 10.05[4] (3d ed. 1999) ("Contract claims will not be dismissed for failure to attach the contract to the complaint.").

Additionally, while the Complaint does not specify exactly which purchase orders upon which it is based, it does include sufficient detail regarding the time period of violation—beginning in early 2015 and continuing until the present

-8-

time—to provide Defendants with adequate notice of the claim against them. *See Twombly*, 550 U.S. at 555 (noting that while a complaint does need to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," it "does not need detailed factual allegations" to survive a Rule 12(b)(6) challenge).

Plaintiff specifically alleged that "[e]ach of GKN's purchase orders to Stahl expressly incorporates GKN's Terms and Conditions." Dkt. No. 1, p. 9 (Pg. ID No. 9). The Complaint explicitly referenced and attached the actual terms of the Terms and Conditions allegedly violated. Taken in the light most favorable to Plaintiff, and read in tandem with this Court's "judicial experience and common sense[,]" *Iqbal*, 556 U.S. at 679, the allegations in the Complaint support a finding that Stahl entered into a valid contractual relationship with Plaintiff that incorporated the Terms and Conditions.

Mindful of the relatively lenient standard for surviving a motion to dismiss, the Court finds that the allegations in Plaintiff's Complaint state that the parties had a contract, that Stahl breached certain terms and conditions of that contract, and that the breach resulted in financial losses to Plaintiff. Accordingly, the Court will not dismiss Plaintiff's breach of contract claims for failure to state a claim.

### 2.  Whether Plaintiff Alleged a Right to Relief Above a Speculative Level

Second, Stahl asserts that "[t]o the extent these Terms and Conditions define the rights and obligations of Stahl under the Contract, Plaintiff has failed to allege a 'right to relief above the speculative level.' " Dkt. No. 11, p. 20 (Pg. ID No. 91). Under Stahl's reading of the Terms and Conditions, all provisions of the contract were terminated, other than the Transition of Supply provision, upon Plaintiff's decision to resource[2] the T-Tubes in February 2015. *Id.* at 20–21. Thus, unless Plaintiff alleged that Stahl breached the Transition of Supply provision, Stahl argues that Plaintiff has not stated a right to relief. *Id.*

The Terms and Conditions' Duration provision states that "the duration of each Contract shall be the life of the program(s) into which the Products or Services ultimately are incorporated," and reserves Plaintiff's right to terminate the contract. Dkt. No. 1-6, p. 3 (Pg. ID No. 29). Since the facts indicate that the programs into which the T-Tubes are incorporated are still alive, and the Terms have not otherwise expired, the question turns on whether Plaintiff terminated the contract in February 2015, and if so, whether a termination would void all provisions of the Terms and Conditions, except the Transition of Supply provision.

---

[2] Stahl has not argued that Plaintiff provided it with a written notice of termination, relying on the February emails that notify Stahl of the expectation that resourcing will take nine months.

As an initial matter, Plaintiff disputes that the contract terms were terminated in February 2015. Dkt. No. 18, p. 22 (Pg. ID No. 316). Plaintiff maintains that it is a question of fact, which must be construed in its favor, as to whether their February resourcing constituted a termination of the contract. *Id.* at 22–23. Plaintiff's Complaint alleges that "Stahl did not object [to the resourcing decision] and instead requested that GKN give Stahl at least 90-day notice *before terminating* purchases." Dkt. No. 1, p. 4 (Pg. ID No. 4) (emphasis added). Thus, according to the facts alleged by Plaintiff, which the Court must accept as true, Stahl understood that termination had not yet occurred pursuant to the February resourcing decision.

Plaintiff makes an additional argument that it would lead to absurd results to read the Terms and Conditions as terminated—except for the Transition of Supply provision—beginning in February 2015. Under Michigan law, "contracts must be construed consistent with common sense and in a manner that avoids absurd results." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 545 (6th Cir. 2007) (quoting *Kellogg Co. v. Sablhok*, 471 F.3d 629, 636 (6th Cir. 2006)). The Court notes that the Terms and Conditions do not explicitly state that all other provisions are voided upon application of the Transition of Supply provision. Were the remaining Terms and Conditions to be void since February 2015, Stahl's "transition" shipments to Plaintiff after February would not

be required to adhere to quality requirements, delivery instructions, or compliance with applicable laws. Without further evidence, the Court finds that reading the Terms and Conditions to have terminated in February 2015, with the exception of the Transition of Supply provision, would result in absurdity. Accordingly, this argument cannot be the basis for dismissing Plaintiff's breach of contract claim on a Motion to Dismiss.

### 3.  Whether Plaintiff's Claim to Pierce the Corporate Veil Fails as a Matter of Law

Third, Stahl asserts that Count II of Plaintiff's Complaint should be dismissed because "there is no independent cause of action to pierce the corporate veil," citing to *Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 953-54 (E.D. Mich. 1998). Dkt. No. 11, p. 25 (Pg. ID No. 96).

"It is well established that piercing the corporate veil is not itself a cause of action." *Brennan v. Nat'l Action Fin. Servs., Inc.*, No. 12-CV-10551, 2012 WL 3888218, at *3 (E.D. Mich. Sept. 7, 2012); *see also In re RCS Engineered Prods. Co.*, 102 F.3d 223, 226 (6th Cir. 1996) ("[A]n alter ego claim is not by itself a cause of action.") (applying Michigan law). This is because piercing the corporate veil is an equitable theory or remedy, rather than a cause of action upon which relief can be granted. *See Keystone Mfg., LLC v. Accuro Med. Products, LLC*, No. 1:12-CV-1186, 2013 WL 2318885, at *4 (W.D. Mich. May 28, 2013). Although

-12-

pled as a separate claim, the Court will construe Plaintiff's piercing claim as a request for equitable relief based on Plaintiff's underlying breach of contract claim against Stahl.

"It is a well-recognized principle that separate corporate entities will be respected." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547, 537 N.W.2d 221, 224 (1995). Absent some abuse of the corporate form, Michigan law presumes that parent and subsidiary corporations are separate and distinct. *Id*. A court ignores a parent corporation's separate existence "unless doing so would subvert justice or cause a result that would be contrary to some other clearly overriding public policy." *Wells v. Firestone Tire & Rubber Co.*, 421 Mich. 641, 650, 364 N.W.2d 670, 674 (1984).

"The doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances, and usually determined on a case-by-case basis." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (citation omitted). "A court's decision whether to pierce the corporate veil 'is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven.' " *Tredit Tire & Wheel Co. v. Regency Conversions, LLC*, 636 F. Supp. 2d 598, 601 (E.D. Mich. 2009) (quoting *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007)).

-13-

"Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics*, 475 F.3d at 798. The Sixth Circuit has stated that courts should consider additional specific factors, such as "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302–03 (6th Cir. 2005) (quoting *Laborers' Pension Trust Fund v. Sidney Weinberger Homes*, 872 F.2d 702, 704–05 (6th Cir. 1988)).

In *Tredit Tire*, the Court found that a supplier has properly stated a claim against a secured lender of the defendant company, under theory of piercing the corporate veil, and declined to dismiss the claim. 636 F. Supp. 2d at 602. The Court found that the plaintiff's allegations permitted the conclusion that the defendant was a mere instrumentality of the lender. *Id*. The *Tredit Tire* plaintiff alleged that the secured lender was the only member of the defendant company; the lender replaced the defendant's president with its own employee, who ran the company and made tactical and strategic decisions about the defendant company's business affairs; the lender made decisions about liquidation and vendor payment;

-14-

and the lender's representative made comments using the word "our" when referring to plans, business operations, and financial condition. *Id*. These allegations were sufficient to satisfy the first prong of the veil-piercing test under Rule 12(b)(6) standards.

In the present Complaint, Plaintiff alleged facts which, if proven, permit the conclusion that Stahl is a mere instrumentality of Ligon. Plaintiff alleges that Ligon and Stahl are one and the same because "Ligon owns and directly controls Stahl," "Ligon is Stahl's sole shareholder," "Ligon has been controlling Stahl's supply of T-Tubes to GKN," Stahl represented that it "cannot make a supply decision without Ligon," and "Ligon executives have controlled meetings between Stahl and GKN." *Id*. at 2, 4. Specifically, Plaintiff alleges that while the President of Ligon travelled to attend the meetings regarding the continued supply of T-Tubes, "no representatives from Stahl were present at any of these meetings." *Id*. at 8. Furthermore, Plaintiff asserts that "decisions regarding the continued production of T-Tubes were entirely up to Ligon," and Ligon's name, rather than Stahl's, appeared in the title of Ligon's proposed supply agreement in 2015. *Id*.

Ligon's argument on the matter relies heavily on *United States v. Cordova Chem. Co. of Michigan*, 113 F.3d 572, 581 (6th Cir. 1997), *vacated sub nom. United States v. Bestfoods*, 524 U.S. 51 (1998), and *cert. granted, judgment vacated sub nom. Michigan Dep't of Envtl. Quality v. Bestfoods*, 524 U.S. 924

(1998), and *cert. granted, judgment vacated sub nom. Bestfoods v. Aerojet-Gen. Corp.*, 524 U.S. 924 (1998) (finding that a parent taking an active interest in the affairs of its subsidiary did not pierce the corporate veil). However, the facts in *Cordova Chemical* were established following a fifteen-day bench trial, after proper discovery. *See id*. at 575. Here, such factual discovery has yet to take place.

Although Plaintiff's allegations do not touch upon whether or not Stahl was undercapitalized or maintained separate books and finances, its allegations do assert that Ligon used Stahl to breach its contract with Plaintiff, that corporate formalities were not honored, and that Stahl was used as an instrumentality for the benefit of Ligon. *See Aguirre*, 410 F.3d at 302–03. As the Court must construe the Complaint in a light most favorable to Plaintiff and accept all of its factual allegations as true, *Lambert*, 517 F.3d at 439, such allegations provide a sufficient basis upon which Plaintiff could satisfy the first prong of the veil-piercing test under Michigan law.

Next, the second "fraud or wrong" element of the test requires that Plaintiff's Complaint must have stated allegations that the corporate entity was used to commit a fraud or wrong. *Servo Kinetics*, 475 F.3d at 798. In *Servo Kinetics,* the Sixth Circuit held that a breach of contract could constitute a "fraud or wrong" for the purpose of veil-piercing liability. 475 F.3d at 799–800. Nevertheless, "[t]he mere fact that a corporation commits an unfair labor practice,

-16-

or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should personally be liable." *Stramaglia v. United States*, No. 06-13764, 2007 WL 4404185, at *3 (E.D. Mich. Dec. 13, 2007) (quoting *NLRB v. Great Kansas Roofing*, 2 F.3d 1047, 1053 (10th Cir. 1993)). The act of the shareholders disregarding the separateness of the corporate identify must cause the injustice or inequity. *Id*. In the present case, Plaintiff has alleged that Ligon used threats of Stahl's insolvency to force Plaintiff to pay higher prices for the T-Tubes and avoid Stahl's contractual obligations to pay for expedited freight. Since these allegations suggest that the inequities stemmed from Ligon's disregard of its separate corporate identity, Plaintiff's allegations are sufficient to establish the second prong of the veil-piercing test.

Finally, the third "unjust loss" element of the veil-piercing test demands that Plaintiff allege that it suffered an unjust loss. *Servo Kinetics*, 475 F.3d at 798. Stahl's Motion to Dismiss did not address the issue of loss, instead relying on the argument that since Stahl had not breached the contract, it had not committed a wrong under the second prong. *See* Dkt. No. 11, pp. 25–26 (Pg. ID No. 96–97). Accordingly, as Plaintiff has claimed losses at approximately $80,000 per expedited shipment resulting from the breach of the parties' contract, there are sufficient allegations of loss under the third prong of the veil-piercing test.

-17-

Viewing Plaintiff's allegations in the most favorable light, the Court finds that Plaintiff has set forth a viable basis for seeking to hold Ligon liable for Stahl's contractual breach.

**B.   Defendant Ligon Industries LLC's Motion to Dismiss [12]**

### 1.  Whether the Court Has Personal Jurisdiction Over Ligon

"A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When a defendant is not physically present in the forum, due process requires that he or she have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

The plaintiff bears the burden of establishing that jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Nevertheless, when the court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. *See Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n. 3 (6th Cir. 2006). Additionally, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff" and "not weigh the controverting assertions of the party

-18-

seeking dismissal." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

### a. Alter Ego Theory

Plaintiff contends that "personal jurisdiction hinges on [the] plaintiff successfully piercing the corporate veil," and is therefore " 'inextricably intertwined' with a determination on the merits." Dkt. No. 19, p. 16 (Pg. ID No. 388). Since factual determinations on claims are reserved for post-discovery proceedings, Plaintiff argues that it should not be required to establish the validity of its alter ego theory at the pleading stage. *Id.*

The Sixth Circuit has previously reviewed the use of the alter-ego theory to exercise personal jurisdiction, stating:

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

The Court must look to the law of Michigan in applying the principles of the alter ego theory of personal jurisdiction. *See Estate of Thomson*, 545 F.3d at 362 (noting that the court must look to the law of the forum state). This inquiry

-19-

substantially mirrors the Court's previous analysis of Plaintiff's veil-piercing claim under Rule 12(b)(6). *See Flagstar Bank, FSB v. Mortgage Loan Specialists*, No. 10-10889, 2010 WL 3862746, at *10–11 (E.D. Mich. Sept. 28, 2010) (evaluating the plaintiff's alter ego theory by applying Michigan law regarding requests to pierce the corporate veil). As noted above, the Court will allow Plaintiff's veil-piercing claim to proceed based on the facts alleged.

The Sixth Circuit has stated that "where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount 'proof which would, in effect, establish the validity of their claims and their right to the relief sought.' " *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989) (quoting *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir. 1975)). As the Court has not held an evidentiary hearing, the facts and allegations will be viewed in the light most favorable to Plaintiff. *See Estate of Thompson*, 545 F.3d at 360. Under this lenient standard, the Court finds that Plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over Ligon based on its alter ego theory.

## V. CONCLUSION

Accordingly, for the reasons discussed in detail above, the Court **DENIES** Defendants' Motions to Dismiss [11, 12].

IT IS SO ORDERED.

Dated:        May 3, 2016

/s/Gershwin  A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge
